Two RIVERS MANUFACTURING COMPANY, Respondent, vs. BEYER and others, Appellants.
SAME, Appellant, vs. SAME, Respondents.

*March 18 — April 25, 1889.*

*(1) Equity: Cloud upon title: Void judgment: Execution sale: Condition of relief. (2) Purchaser in good faith: Consideration in previous sale. (3, 4) Foreclosure of tax certificate: Redemption: Jurisdiction: Judgment for costs. (5) Joinder of causes of action.*

1. Where a judgment void for want of jurisdiction, and the sale of land under an execution issued thereon, are set aside as clouds upon the title to such land, the owner should not be required, as a condition of such relief, to pay the amount for which the land was sold under such execution.

Two Rivers Mfg. Co. vs. Beyer and others.

2. Mere inadequacy of consideration in a previous sale of land cannot affect the title of a subsequent *bona fide* purchaser.

3. If the plaintiff in an action to foreclose a tax certificate accepts the money paid to redeem the land, the court cannot thereafter retain the cause even to render judgment for costs.

4. A judgment for costs so rendered is without jurisdiction and void, even though the defendant's attorney consented thereto.

5. In an action *quia timet* a prayer for the recovery of possession of the land may be treated merely as a prayer for full relief, and not as indicating the joinder of a cause of action in ejectment.

APPEALS from the Circuit Court for *Outagamie* County.

The action is to set aside, as clouds upon the plaintiff's title to certain land, a judgment in the case of W. H. Webster against J. L. Pfau, a sheriff's deed, and a conveyance by the grantee in such sheriff's deed. Besides the facts upon which the claim to such relief is based, the complaint states that the plaintiff is the owner in fee simple and entitled to the possession of the land in question, and that the defendants unlawfully withhold such possession. The prayer for relief also asks judgment for the recovery of the possession of the land.

A demurrer to the complaint, on the ground that several causes of action were improperly united, was stricken out, and the defendants answered separately. The facts appearing upon the trial, and the findings and judgment of the court, are sufficiently stated in the opinion. Both parties appeal from the judgment.

For the plaintiff there was a brief by *Ellis, Greene & Merrill,* and oral argument by *Geo. G. Greene.* They argued, *inter alia,* that the judgment in *Webster v. Pfau* and the sale under it are void as to plaintiff. A court has no power to decree and foreclose a lien for costs only. Costs are given by statute only as incident to some relief in a legal proceeding. They are no part of that relief; and when a party is entitled to no other relief he cannot have costs. *Noyes v. State,* 46 Wis. 250; *Gray v. Dougherty,* 25

Cal. 266; *Rader v. Southeasterly Road Dist.* 36 N. J. Law, 273; *State v. Kinne,* 41 N. H. 238.   Hence, when the plaintiff's cause of action is ended, there can be no judgment for costs.  *Geiser T. M. Co. v. Smith,* 36 Wis. 295; *Buell v. Flower,* 39 Conn. 462; *McCoy v. Loughery,* 11 Phila. 302; *Thompson v. Union E. Co.* 77 Mo. 520; *Bendit v. Annesley,* 27 How. Pr. 184.   A court of equity has no inherent power to decree costs, without statute.  *Struthers v. Christal,* 3 Daly, 327.

For the defendants there was a brief by *Webster & Wheeler,* and oral argument by *W. H. Webster.*   To the point that two · causes of action were improperly joined, they cited *Faesi v. Goetz,* 15 Wis. 231; *Flynn v. Bailey,* 50 Barb. 73; *Akerly·v. Vilas,* 21 Wis. 88; *Leidersdorf v. Second Ward S. Bank,* 50 id. 406; 2 Wait's Pr. 364; sec. 2647, R. S.

ORTON, J.   The facts necessary to the decision of this case are briefly as follows: One J. Louis Pfau, Sr., was the original owner of the lands in controversy.   They were sold for taxes, and bid in by the county of Oconto, and said county held the certificates.  *George Beyer,* one of the defendants in this suit, was the treasurer of said county. He employed one J. M. Simpson, a married woman, to buy of the county the tax certificates for him, he furnishing the purchase money, and she did so purchase the same, and said *Beyer,* as such treasurer of the county, duly assigned the certificates to her on behalf of the county, to be held by her for his sole use and benefit and subject to his orders or directions.  *Beyer* sold the certificates to W. H. Webster, Esq., an attorney at law, and said Simpson, by his order, duly assigned them to said Webster.   Whether Webster knew of the interest and secret trust of *Beyer* in them does not very clearly appear, beyond a strong suspicion based upon very significant circumstances.   Webster commenced a suit of foreclosure of said certificates against

Pfau, who was a nonresident, under sec. 1181, R. S., and Pfau, the defendant, made such answer as is allowed by said statute in such cases, by his attorney, one H. H. Woodmansee, and the cause was at issue.

Pending the case, Pfau negotiated with the plaintiff in this suit to sell said lands to it for an adequate consideration, but said plaintiff, on examination of the title, found these tax certificates outstanding, and refused to purchase said lands until they were redeemed. The plaintiff, at that time, had no actual notice or knowledge of the pending of said foreclosure suit. The said Pfau thereupon sent the money to his said attorney, Woodmansee, to redeem said certificates and pay the costs of said suit. The attorney, Woodmansee, paid to the clerk of the county the money to redeem the lands from said sales, and obtained a certificate of the redemption thereof, and delivered it to the plaintiff in this suit, and notified the said Webster of such redemption, and Webster received and accepted said redemption money to his own use, as the holder of said certificates, without demanding the costs of said suit or any other moneys from said Pfau. But it seems that the attorney, Woodmansee, did not pay the costs of said suit. Thereupon the purchase of said lands from said Pfau was consummated by the plaintiff in this suit, and the consideration money paid. The said Pfau and the plaintiff both supposed that said suit was ended, and the said lands exempt from any lien or incumbrance on account thereof or of said certificates.

The said suit was commenced about the 23d day of May, 1883, and the certificates were so redeemed in December of that year. But the attorney, Woodmansee, did not pay the costs of said suit and have it discontinued of record, but, in fraud of said Pfau and the plaintiff, treated the cause as still subsisting, and on June 6, 1884, without the knowledge of said Pfau or the plaintiff, and without any

employment or retainer by either of them since the suit was so disposed of by the redemption of said certificates and the acceptance and receipt of said redemption moneys by the said Webster, and knowing that the plaintiff had become the purchaser of said lands and was solely interested in said suit, the said H. H. Woodmansee, evidently with the intent to defraud them both, filed an amended answer in said suit, as still subsisting, on behalf of said Pfau alone as the sole defendant, alleging therein that the lands were not subject to the taxes levied and assessed, and denying that any taxes on said lands were due and owing, and any knowledge or information that the plaintiff Webster owned said certificates. This amended answer was entirely unnecessary, for the original answer contained the same matters of defense. It was done by Woodmansee evidently with intent and in order to treat the said suit as still pending and subsisting, notwithstanding the redemption of said certificates and the receipt by him of the costs in order to have the same discontinued, and to defraud the said Pfau, his former client, and the plaintiff, and without their knowledge, and by fraudulent concealment thereof.

The next day after the amended answer was so filed there were certain findings of fact made by the court: (1) that the plaintiff was the actual holder and owner of said certificates when the suit was commenced; (2) that the lands had not been redeemed at that time; (3) that a certain amount was then due for taxes and interest and for the necessary costs of the suit; (4) that Pfau, at the time, was the owner of said lands; and (5) that since the action was brought the defendant Pfau had redeemed the certificates. The conclusions of law were that the plaintiff Webster was entitled to judgment for the costs and disbursements of the action, and that the same be decreed a lien on said lands, and in case they are not paid the said lands, or so much

thereof as may be necessary, should be sold therefor *and for all further costs and disbursements.* The judgment of the same date is according to said conclusions of law, and Webster assigned the same to said *Beyer.* The attorney, Woodmansee, wrote on the back of the findings that he approved of the same, and signed such approval as the attorney of said defendant Pfau. The costs not having been paid, all the lands were sold together by the sheriff, for $212.12, to one *Willard P. Cook*, who was employed by said *Beyer* to bid off the same and hold the title thereof for him and his use and subject to his direction, and the sheriff's deed was duly made to said *Cook* and said sale confirmed by the court. The attorney, Woodmansee, approved of the taxation of the costs and the confirmation of the sale, and accepted notice thereof for the defendant Pfau, and approved the disbursement of the proceeds of the sale. Afterwards the said defendant *Beyer* sold said lands to the husband of the defendant *E. L. Dorr*, who directed the said *Cook* to deed the same to her. She and her husband were then living in the state of Maine. The lands were worth at least $5,000, and the tax certificates were of their face value of $3,000. A *lis pendens* was filed with the foreclosure suit. The defendant *E. L. Dorr* is in possession.

It is proper to repeat that neither the said Pfau nor the plaintiff knew anything of the proceedings after the redemption of the certificates. There is no direct proof that Webster knew that Woodmansee had received from Pfau the costs as well as the redemption money, or that there was any collusion between them or between Webster and *Beyer;* but the facts and circumstances tend strongly to establish such an implication, and that *Beyer* still owns the land. Webster knew that he purchased the certificates from *Beyer*, as the real owner, when he had no right, being county treasurer, to either own or sell them, and he ought to have known that Woodmansee had no right to act as

the attorney of Pfau after the suit was ended by the redemption of the certificates, and that he was defrauding both Pfau and the plaintiff. It is unnecessary to say anything further about the fraud of these transactions, for there was no clear and satisfactory proof that the defendant *E. L. Dorr*, as the purchaser from *Cook*, had any notice of it, and there was nothing to clearly show but that she was a *bona fide* purchaser for a valuable consideration.

The circuit court held in its findings that the inadequacy of the consideration of $212.12 of the sheriff's sale to *Cook* " was sufficient to put her on inquiry as to the whole subject of that foreclosure suit " (whatever that may mean), and the conclusion of law is that " the plaintiff is entitled to judgment setting aside said judgment in the case of *Webster v. Pfau*, setting aside the sheriff's sale and deed to *Willard P. Cook*, and the deed from *Willard P. Cook* to *E. L. Dorr*, upon the plaintiff paying to *E. L. Dorr*, or into court for her use and benefit, the amount paid for said land at said sheriff's sale, to wit, the sum of $212.12, and the cost of recording said sheriff's deed, to wit, $1.50, with interest thereon at seven per cent. per annum from the date of such sheriff's sale, to wit, October 31, 1885, until the time of said payment;" and such, also, is the judgment. That part of this determination requiring the plaintiff to pay such sum to the defendant *E. L. Dorr* was excepted to by the plaintiff's counsel, and that part of the above finding of fact that such " inadequacy of the consideration of $212.12 of the sheriff's sale to *Cook* was sufficient to put *Dorr* on inquiry as to the whole subject of that foreclosure suit," was excepted to by the defendant's counsel.

We think that both of these exceptions were well taken. If the plaintiff is entitled to any relief as against the defendant *E. L. Dorr*, he is entitled to it unconditionally; and mere inadequacy of the price or consideration of a previous sale cannot affect the title of a subsequent *bona fide* pur-

chaser in good faith, and is no evidence of any other fraud; and if the judgment was only irregular or erroneous, and not void, it was quite immaterial that she was put on inquiry or had notice of the foreclosure suit, for *collaterally* the judgment was valid.

The plaintiff's counsel excepted "to the failure of the court to find as a conclusion of law that the judgment in said action of *Webster v. Pfau*, in so far as it decreed any lien on said lands, was void for want of jurisdiction." This single exception is the only one that is material, or that we shall consider, and the findings of fact or conclusions of law of the court below need not be further considered. The evidence upon which this exception depends is indisputable, and we think the circuit court should have found that judgment absolutely void for want of jurisdiction in the court to render it. The question will be divided — *First*. Could the court have legally retained the cause after the redemption of the lands from the tax-sales and certificates by the defendant Pfau, and the receipt and acceptance of the redemption money by the plaintiff Webster, to render a judgment against the defendant for costs, and make such judgment a specific lien on the lands? *Second*. If not, was such illegality or error jurisdictional, so as to make the judgment and sale under it void?

1. The tax certificates were the cause of action, and the sole cause of action, of that suit of foreclosure. They are to be foreclosed in the same manner as mortgages (sec. 1181, R. S.), and are the cause of action, the same as mortgages are the cause of action in suits of foreclosure. The redemption of the lands from the certificates, pending the suit of foreclosure, must have the same effect upon the suit as the payment of the mortgages, or the redemption of the lands from the mortgages, pending suits for their foreclosure. In both cases, respectively, the tax certificates and the

mortgages are the subject matter of the suits. The sole object of the suits is to foreclose them, and the sole result is the judgment of foreclosure. The suit is brought upon them, and on account of them alone. They are the principal of the suit, and the *lis pendens* as notice is of them alone, and of the lands upon which they are liens and the title of which is involved in and will be affected by the action and the judgment therein. In all possible respects they are the same as any other causes of action, such as a promissory note, or a bond for the payment of money, a trespass, or *damage feasant*, or any other which may be satisfied or discharged by the payment of money, and for which a judgment may be rendered. There could be no action without such a cause or some cause of action. When such a *cause* no longer exists, there is no longer any cause of *action*, and the action is at an end. An action could not continue as an action when the cause has been removed, any more than an action could be commenced without a cause of action. The costs are merely *incidental* to an action based on a sufficient cause of action, and are not part of it, but the creature of the statute, which can only follow a judgment or final determination of an action, in which the cause of action is merged. An action cannot be brought merely for the costs thereof, nor can an action be maintained, after the cause of action has been removed, merely for the costs thereof, for then they would be no longer *incidental*, but the *principal* of the suit. Can an action be commenced to foreclose a mortgage or tax certificates, or on a note or bond, or for trespass, after the mortgage or tax certificates had been redeemed, or the note or bond had been paid, or the trespass satisfied, and the money had been accepted by the plaintiff? No more can such actions subsist and continue to judgment after such redemption, payment, or satisfaction had been acknowledged by the accept-

ance of the money. The action is ended when the cause of action is taken out of it. The reason of the rule is apparent. It is inherent.

The following cases illustrate, as well as establish, this rule: In *Dunton v. Reed*, 17 Me. 178, cattle had been impounded, and the plaintiff filed a libel for their forfeiture, and no damage had been claimed, and the court held that the damages were the sole cause of action, and the action could not be maintained merely for the costs and expenses of impounding. Chief Justice WESTON said: "The expenses are *incident* to the remedy, which is based upon the damages sustained. Here no damage is claimed. The very ground which justifies and upholds the remedy is waived and abandoned." In *Osgood v. Green*, 33 N. H. 318, trespassing animals had been impounded, and the officers whose duty it was to examine the premises and assess the damages found that no damage had been sustained, and yet the action was brought to recover the expenses of impounding and costs of the inquiry. The court held that the damages were the ground of the action, and as there were no damages the action could not be brought or maintained merely for the expenses and the costs. In *Ayer v. Ashmead*, 31 Conn. 447, there were several joint trespassers and separate suits against each. One suit was settled, and the money received by the plaintiff, and the defendant discharged. It was held to operate as a discharge of the entire cause of action against all of the trespassers, and that after that there could be no recovery in the other suits either for nominal damages or for costs. The court uses the following language: "If the damages had been satisfied or discharged before the suit was brought, no one would doubt that such satisfaction or discharge would be a good bar to the action. Is it any the less a bar because the satisfaction was after suit brought?" In *Buell v. Flower*, 39 Conn. 462, the action was upon a promissory

note, and the defendant paid and the plaintiff accepted and received what was due upon it, after the suit was brought, but no costs were paid or demanded. The action was retained by the plaintiff, and he claimed that he was entitled to a judgment for nominal damages and for costs, and the question was reserved for the supreme court. It was held that the suit was at an end by the plaintiff's acceptance of the money due on the note. The court said: "The voluntary acceptance of money in full payment of the debt operated as a discharge of the debt, and consequently as a discharge of the costs *incident* to the debt;" citing *Ayer v. Ashmead*, 31 Conn. 447, and *Canfield v. Eleventh School Dist.* 19 Conn. 529. In *Bendit v. Annesley*, 42 Barb. 192, an action had been brought upon a promissory note, and the defendant sent to the plaintiff his check for the debt, interest, and protest, and the plaintiff received and accepted the same in the full payment thereof. Afterwards the plaintiff claimed that the costs, also, should have been paid, and demanded. the same. It was held that the suit could not be continued merely for judgment for the costs, and that the debt, which was the *principal*, having been paid, and the payment accepted by the plaintiff, and thus extinguished, the costs which were an *incident*. of such principal were extinguished also. Judge BARNARD said in his opinion: "Costs of suit are but an incident to the debt to recover which the action is brought. The extinction of the principal carries with it the incident. If the plaintiffs meant to insist on the payment of the accrued costs, they should have refused to receive the payment of the debt unless the costs were paid." In *Johnson v. Brannan*, 5 Johns. 267, the action was also on a promissory note, which was paid and the payment accepted after suit brought. It was held that the court *had no power* to render judgment for costs. The costs do not accrue until judgment in the main action. Until then they may be abolished or changed by

JANUARY TERM, 1889.            221

Two Rivers Mfg. Co. vs. Beyer and others.

statute. If there is no judgment on the cause of action, there can be no costs. *Hunt v. Middlebrook,* 14 How. Pr. 300; *Torry v. Hadley,* 14 How. Pr. 357; *Supervisors v. Briggs,* 3 Denio, 173.

But this identical question has been decided by this court, and some of the above cases cited and approved. In *Geiser T. M. Co. v. Smith,* 36 Wis. 295, the action was on a promissory note, and the defendant, after it was commenced, paid the note, principal and interest, and the plaintiff's attorney accepted the money, but claimed $17 costs, which the defendant refused to pay, and there was an agreement in the note to pay the plaintiff five per cent. for attorney's fees if suit be brought on the note. The plaintiff refused to surrender the note, and retained the action, and obtained a judgment for the costs. It will be seen that this is a very strong case against the rule, and yet this court held that "whether the suit was *commenced or not,* the acceptance by the plaintiffs of full payment of the amount due on the note extinguished their right to prosecute it." Chief Justice RYAN said in the opinion: "It may be that the plaintiffs might have refused the payment, and prosecuted the suit to judgment for damages and costs. But they could not receive the damages and reserve the right to prosecute the suit for costs. . . . In such cases the right to recover costs is a mere *incident* of the right to recover damages." In *Mason v. Beach,* 55 Wis. 607, during the pendency of the suit to foreclose the mortgage, the plaintiff executed a quitclaim deed of the premises to the defendant, the mortgagor, and it was held that the discharge of the mortgage was a complete bar to the action. These two cases settle the question for this state that the plaintiff had no right to obtain judgment in this case for costs, after the redemption of the certificates and his acceptance of the redemption money.

2. Was this error or illegality *jurisdictional,* and was the judgment *void?* The contention of the learned counsel of

the defendants is that, the court having had jurisdiction of the cause when it was commenced, anything irregularly, illegally, or improperly done by the court afterwards in that suit is merely erroneous and not jurisdictional or void. But this contention is not supported by reason or authority. There is every possible reason for so holding. "Jurisdiction is the power to hear and determine a cause." In this case the *cause* was disposed of and determined by the removal of the cause of action therefrom. The jurisdiction of the court in that action was terminated. Has the court jurisdiction to hear and determine and render judgment in a pretended action, when no cause of action is shown or claimed? No more has the court the jurisdiction to continue the action and render judgment therein after the cause of action has been withdrawn from it or is out of it in any way. It has no jurisdiction except to dismiss it or expunge it from the records. Jurisdiction must be of the *subject matter* of the action, as well as of the parties. If there never was or there is no longer any *subject matter* of the action, then there is no jurisdiction. This proceeding itself is statutory, and the costs are not only generally the creature of the statute, but in this case can only follow a judgment of foreclosure. The statute does not give the court power to render a judgment for costs except with or incident to the judgment of foreclosure. The statute, therefore, does not confer any jurisdiction to render such a judgment. Authorities are numerous that a court can *lose* jurisdiction after it has acquired it as readily as it can assume it where there is none in the first place. If a justice fails to enter in his docket an adjournment of a cause, the courts say that he has *lost* jurisdiction to further try the cause.

But this question, like the other one, has been repeatedly decided by this court. In *Hurlbut v. Wilcox*, 19 Wis. 419, on *certiorari* to the justice, his judgment for costs against

the defendant for $26.54 was set aside on the ground that the statute only allowed him to recover in such a case $15, and that the court had no *jurisdiction* to render the same, and that the judgment for costs was *void.* Chief Justice DIXON said in the opinion, that "in this he clearly *exceeded his jurisdiction,* and the judgment as to costs must be quashed." In *Faust v. State,* 45 Wis. 273, an information charging the defendant with unlawfully keeping and maintaining a saloon, etc., the circuit court rendered judgment that the defendant pay the costs of the prosecution, amounting to $178.20, and stand committed until paid, and this court held that the circuit court had *no power* to render such a judgment for costs, on the ground that the statute did not so provide; and Mr. Justice TAYLOR cites the language in *Taylor v. State,* 35 Wis. 298, "that unless the law expressly provided that the costs of the prosecution could be adjudged to be paid by the defendant upon his conviction of an offense, *there was no power in the court* to impose the payment of such costs upon the defendant." In *Noyes v. State,* 46 Wis. 250, judgment for costs was rendered against the state, and Chief Justice RYAN said in the opinion: "It is very certain that no statute of this state *gives any authority* to this court to render judgment for costs against the state in a criminal prosecution; and that this court *has no jurisdiction to render such a judgment,* even were it so ordered by the mandate of the supreme court of the United States." It might be said here, neither has the statute given any authority to the court to render a judgment for costs against the defendant in this case except as following a judgment of foreclosure of the tax certificates, or after they have been redeemed and the plaintiff has accepted the redemption money, as we have seen. The statute requires that the justice shall enter in his docket every adjournment of a cause, etc. R. S. sec. 3574, subd. 5. In *Brahmstead v. Ward,* 44 Wis. 591, the justice failed to make

such entry, and it was held that he thereby lost jurisdiction to render any judgment in the case. Mr. Justice TAYLOR said in the opinion that "unless such entry be made the justice *loses* jurisdiction," and refers to *Grace v. Mitchell*, 31 Wis. 533; *Roberts v. Warren*, 3 Wis. 736; and *Brown v. Kellogg*, 17 Wis. 475.

Many other cases in this court of the same kind might be cited. How is this? May not a court have jurisdiction of a cause in the first place, and *lose it* by some subsequent event? This is the real question in this case. In *In re Pierce*, 44 Wis. 411, it was held that although the court had jurisdiction of the case for the contempt, the order of commitment was in *excess of its jurisdiction*, and that the remedy by *habeas corpus* was applicable. In *In re Crow*, 60 Wis. 349, it was held, on *habeas corpus*, that the prisoner had suffered his full term of imprisonment, and that therefore the jurisdiction of the court was lost to imprison him further, and that the order of arrest was void. Many other cases in this court might be cited to the same effect, and the doctrine is firmly established that, although the court may have had jurisdiction of the cause, it might lose it and do acts in the same without the authority of law that would be void for want of jurisdiction. But I have extended this inquiry far enough, and perhaps too far. The question is an important one, and especially important to the parties. Reference may be had to the able brief of the plaintiff's counsel for other arguments and authorities. It follows, therefore, that the judgment for costs in the case of *Webster v. Pfau*, and the sale of the lands under it, are void. This invalidates the title of the defendants *Willard P. Cook* and *E. L. Dorr*. *Manning v. Heady*, 64 Wis. 630.

To raise any question as to whether the consent and approval of the attorney, Woodmansee, to and of these proceedings is binding upon Pfau, the defendant in that case, is preposterous and absurd. What he did or attempted to

do on behalf of his former and defrauded client, after the case in which he had been retained was at an end by the redemption of the certificates, was only in aid of the scheme to defraud and swindle his former client and the plaintiff out of the lands. He had no employment or authority to act further as the attorney of Pfau after he knew that the case was ended and that Pfau had sold the lands to the plaintiff and had no further interest in them or in the suit. He acted in the interest of *other* clients, and served *them* in what he did after that.

The question was raised by demurrer that the two causes of action of *quia timet* and ejectment cannot be joined. The objection is more technical than substantial. The plaintiff had the right to bring this suit to set aside these clouds and incumbrances upon its title, and the prayer for the recovery of the possession may be treated as a prayer for full relief in one action. This is according to a familiar rule that when a court of chancery obtains jurisdiction of a cause it will retain it to administer full relief.

The assignment of the judgment to *George Beyer* goes with the judgment, and was, of course, nugatory. As to the other defendants, their rights were in the tax certificates, and they had been redeemed, so that they are disposed of without the necessity of holding that Webster was guilty of a fraud, or that he held the certificates in the interest of and in trust for *Beyer*, the county treasurer.

This disposes of the whole case, as we understand it. The decision and judgment of the circuit court, although very informal and confused, are in the main correct. The only errors were in requiring the plaintiff to pay anything as a condition of relief, and rendering the judgment on insufficient and untenable grounds. The findings of fact were also in the main correct, but they are so broken in upon by so much of opinion and argument that their coherency and point are much impaired. The judgment will have to be

reversed to get rid of this improper condition of payment by the plaintiff; but we do not think that the plaintiff ought to pay any costs.

*By the Court.*— On the appeal of the plaintiff the judgment is reversed, and the cause remanded with direction to render judgment setting aside the judgment in the case of W. H. Webster against J. L. Pfau, Sr., and the sheriff's sale of the lands under it, and the sheriff's deed to *Willard P. Cook*, and the deed from *Willard P. Cook* to *E. L. Dorr*, the defendant, and that the title to the lands be confirmed in the plaintiff, and that he have possession thereof. On the appeal of the defendants the judgment is affirmed.