EBEN BARTON & CO. *v.* TOWN OF PITTSFORD.

*Intoxicating Liquor.* *Town Liquor Agent.* *Selectmen.* *Agency.*
*Ratification.*

Since the passage of the Act of 1863, imposing the duty of purchasing liquors for the town agency upon the selectmen, the agent has no authority to make such purchases in the name and on the credit of the town, and can only act as the agent of the selectmen by their authority in making such purchases.

Such authority to the agent, by a board of selectmen, would not extend beyond their official year.

The plaintiffs, in dealing with the agent, relying upon his word alone for his authority, dealt with him at their peril.

A settlement with the agent at the end of the year by the selectmen *held* not a ratification of his unauthorized acts in making the purchases, where it appeared that they did

not know when they made the settlement that he had bought on the credit of the town and was then owing for the liquors.

The same man had been agent for several years, and the selectmen had never furnished him with any money to buy with, but had settled with him at the end of each year, and at the beginning of the last year of his agency, which was the year the purchases in question were made, he had on hand in liquors and cash between $200 and $300. *Held* that under these circumstances it did not follow that the selectmen must have known when they settled for said last year that the purchases were made on credit.

As the settlement did not reveal the fact that the purchases had been made on the credit of the town, there was no occasion to revoke an agency which had never existed or been exercised to the knowledge of the selectmen. Hence purchases made after the settlement and before that year of the agency expired, were equally unauthorized with those made before.

The selectmen taking a note of the agent for the amount due from him to the town, growing out of his agency, at the time of the settlement, but returned to him several months afterwards, when the selectmen learned he had bought on the credit of the town, was not such an appropriation of the profits as constituted an act of ratification.

ASSUMPSIT to recover for a quantity of liquor. Plea, the general issue. Trial by the court, September term, 1871, WHEELER, J., presiding.

The plaintiffs were liquor dealers in New York city, and sold the liquors in question for a fair price. The liquors were sent, marked " Town of Pittsford, H. F. Tiffany, Agent," and were received by him. Said Tiffany was the regular commissioned liquor agent of the defendant town from May 1st, 1861, to May 1st, 1869, and acted as such agent during all said time ; and purchased all the liquors sold in his agency, amounting to several hundred dollars each year, in behalf of the town, except as hereafter stated. It did not appear that he made said purchases by the request of the selectmen, from year to year, except in one or two years, but it appeared that just before the annual March town meeting of each year the selectmen of said town called upon said Tiffany and looked over his stock and accounts as much as they saw fit, and settled with him as such agent, allowing him a salary of $50 per year, and taking any profits made in the business and passing the same over to the town. Soon after the annual town meeting of 1868, the selectmen for the year ensuing notified said Tiffany that they would purchase the liquor for his agency for the ensuing year, and requested him to notify them whenever any more liquor should be wanted, and told him they would purchase the same ; and said selectmen did order one or two bills as called

upon, amounting to about $250, and said Tiffany did not thereaf-
terwards notify the selectmen during said year that he wanted any
more liquor, but purchased the balance used in his agency him-
self. Said Tiffany had purchased more or less liquor of the plain-
tiffs in the preceding years, and had told them he was the liquor
agent of the town, and had authority to purchase in behalf of the
town; and they were not informed of the said notice which the
selectmen gave said Tiffany in the spring of 1868.

A little before the annual March meeting of said town in 1869,
said last mentioned selectmen called on said Tiffany and settled
with him as liquor agent, in accordance with his report for the
year preceding. His report was accepted by the town, as ap-
peared from the vote of the town at said town meeting.

After the said town meeting of 1869, but before the 1st of May
following, when Tiffany's agency expired, and after the date of
the last sale by the plaintiffs, the selectmen of the preceding year,
being appointed a committee for the purpose by vote of the town,
made another settlement with Tiffany as liquor agent of said town,
in pursuance of a vote of said town, and in that settlement they
found the profits of the business due the town were about $378,
and took Tiffany's promissory note for the same, and passed said
note over to the treasurer of the town. In the fall of 1869, Tif-
fany stated that the town did not owe anything for liquors pur-
chased that year. In December following Tiffany failed in busi-
ness, and was soon after adjudged a bankrupt, upon a creditor's
petition in bankruptcy.

Said town never furnished Tiffany with any funds in said liquor
business, but he paid for the liquors purchased by said selectmen
in 1868, and for all the other liquors that went into his agency,
so far as he did pay for them, out of the proceeds of the business.

Said last mentioned selectmen did not know, when they made
said settlement, that Tiffany was owing for liquors purchased on
the credit of the town, and did not know that he bought on the
credit of the town until after his failure in December, 1869, and
immediately thereafterwards said note was sent to him through the
mail, it did not appear by whom, and was by him destroyed.
The liquors in question were charged to the town, and the receipts

were made to the town for the payments made from time to time, and the plaintiffs sold said liquors on account of the town, relying on Tiffany's authority as agent.

Tiffany kept a store during the time of his agency, and kept the liquors and his books and papers in his store, and the said settlements were made there. The liquors sued for were sold on four months' time, interest thereafter.

The plaintiffs put into the case the reports of the town treasurer of Pittsford, rendered and accepted at the annual March town meetings of 1867 and 1868, and said report of 1868 contained an item, under date of March 5th, 1867, as follows: " Credit by cash of H. F. Tiffany, liquor agent, $26.35 ;" and said report of 1867 contained an item, under date of April 7th, 1866, as follows: " Credit by cash of H. F. Tiffany, liquor agent, $47.65."

Plaintiffs also put into the case the selectmen's reports on the finances of the town of Pittsford, rendered and accepted at the annual town meetings of 1867 and 1868. Said report of 1867 contained an item as follows: " There is due from the liquor agent $26.35 ;" and the report of 1868, " There is due from the liquor agent $84.97."

The plaintiffs' specifications showed an account, beginning February 20, 1868, and ending March 20, 1869, and the last item of charge was $152.25, the whole amount of the debit being $710.55. The credits began October 26, 1868, and ended October 12, 1869, and being in all $552.60 ; leaving a balance due of $157.95.

On the foregoing, the court rendered judgment for the defendants to recover their costs. Exceptions by the plaintiffs.

*Dunton & Veazey*, for the plaintiffs.

The selectmen may employ the agent to make the purchases for them, and adopt and ratify the purchases afterwards, although never having previously conferred such authority. *Topsham* v. *Rogers*, 42 Vt., 189 ; *Erwin et al.* v. *Richmond*, ib., 557. The settlement of the selectmen before the March meeting of 1869, and the acceptance of Tiffany's report by the town at that meeting, was a ratification of the purchases by Tiffany, as agent of the selectmen up to that time. All the circumstances of the case

show, that the settlement and acceptance were with full knowledge of all *material* facts, or at least with the means of acquiring knowledge, which *is* sufficient. Dunlap's Paley on Agency, p. 172, note and cases cited ; *Smith* v. *Pinney*, 32 Vt., 282 ; *West* v. *Blakeway*, 40 E. Com. Law R., p. 828, marg. p. 728.

Another ground upon which the plaintiffs can recover as to items prior to March meeting of 1869, is, that plaintiffs were warranted in dealing with Tiffany as they did, by reason of the defendants having for years recognized Tiffany's authority in the premises, and repeatedly and expressly ratified his transactions as agent. Dunlap's Paley on Agency, marginal paging, 171. The credit arising from ostensible employment continues, at least with regard to those who have been accustomed to deal upon the faith of that employment, until they have notice of its being at an end, or till its termination is notorious. Dunlap, p. 188, and cases cited ; p. 162, note I. ; p. 168, and cases cited. *Bradish* v. *Belknap & Edson*, 41 Vt., 172 ; *Beecher* v. *Grand Trunk R. R. Co.*, 43 Vt., 133 ; II. Kent's Com., 828, marg. paging, 615 ; *Williams* v. *Mitchell*, 17 Mass. 98. Having thus in legal effect held Tiffany out as the agent of the selectmen, to buy liquors for the agency, and having furnished him with no funds to buy with, he had a right to purchase on the defendant's credit. *Sprague at al.* v. *Gilbert et al.*, 9 Met., 91 ; *Backman* v. *Charlestown*, 42 N. H., 125 ; N. H. Dig., p. 21, § 63 ; p. 22, § 80.

If it should be claimed that the foregoing argument is not sound as to purchases made prior to the settlement in February, 1869, on the ground that plaintiffs could not rely upon actual or apparent authority as extending from one year to another, this objection cannot be raised as to the item of $152.25, sold March 20, 1869, because Tiffany's official year extended from May to May, and by the settlement with Tiffany, just before the March meeting, and by accepting his report at that meeting, the defendants expressly and publicly recognized his authority to purchase liquors for the agency, at least until the end of his official year, which extended to May.

*Edgerton & Nicholson*, for the defendants.

A town agent has no authority, as such, to purchase liquors for the use of his agency. This duty devolves upon the selectmen. Laws of Vermont, 1863, page 20. Tiffany had no authority, *in fact*, delegated to him by the selectmen of Pittsford to purchase the liquors charged for, upon the credit of the town. On the contrary, he had express notice that said authority was withheld. There is nothing in the case as stated, to raise a presumption that the selectmen knew that Tiffany was purchasing liquors upon the credit of the town. But the exceptions show that they *did not*, *in fact*, know that he was so purchasing. The plaintiff had no right to infer from their previous dealings with Tiffany that he was authorized to make said purchases upon the credit of the town. *Erwin et al.* v *Richmond*, 42 Vt., 557. Nor could Tiffany bind the town by any representations he might make as to an authority that did not in fact exist. The selectmen cannot by the settlement be held to have adopted or ratified the unauthorized acts of Tiffany, of which they had no knowledge.

The opinion of the court was delivered by

Ross J. The only question is, whether, under the facts found by the court, the plaintiffs are entitled to recover the balance of their account from February 20, 1868, to March 20, 1869, charged the defendant for liquors furnished H. F. Tiffany, the agent of the town for selling intoxicating liquors. The liquors were all ordered by said Tiffany. He represented that he had authority to make the purchases in the name of the town. The case finds that, in fact, he had no such authority. Since the passage of the act of 1863, imposing the duty of purchasing the liquors for the agency upon the selectmen of the town, the agent to sell such liquors, as such agent, has no authority to make such purchases in the name, and on the credit of the town, and can only act, if authorized by them, as the agent of the selectmen in making such purchases. *Topsham* v. *Rogers*, 42 Vt., 169. Tiffany had made the purchases under an express or implied authority for the selectmen for several years prior to the year 1868. The selectmen for that year informed him that they would discharge that duty themselves, and purchased two bills of liquors, telling

him to notify them when he needed more.   This he failed to do, but supplied himself, and partly by purchases from the plaintiffs. The fact, that the selectmen for previous years had allowed him to make such purchases, and that he had during those years made purchases of the plaintiffs, gave the plaintiffs no right to treat him as authorized by the selectmen for the year 1868.   The plaintiffs were bound to know the law, and that, by the law of the State, the selectmen alone were authorized to make the purchases, and also that the selectmen could make such purchases only during their term of office, one year, and could confer authority upon the agent for that time only.   Tiffany could not act as the agent of the town directly, and only as the agent of each successive board of selectmen, if they chose to authorize him to act for them in making the purchases.   *Erwin et al.* v. *Richmond*, 42 Vt., 557. Tiffany seems to have attempted to make the purchases in the name of the town, as its agent.   This he could not have done, certainly without a special authorization from the town.   We think the plaintiffs, when they dealt with him, relying upon his word alone for his authority, dealt with him at their peril; and that the purchases, when made by him, were wholly unauthorized by the town or selectmen.

· Did the town ever ratify these unauthorized purchases ?   We think not.   The settlement with the selectmen and town in March, 1869, showed that Tiffany had sold more liquors than had been furnished him by the selectmen, but fail to show that the town or selectmen had any knowledge that he had made any purchases on the credit of the town.   The settlement treated the purchases and sales as though they had been made for cash.   The plaintiffs claim, that inasmuch as the selectmen furnished him no money with which to make purchases, they must have known they were made on the credit of the town.   This does not necessarily follow.   The settlement of February, 1868, shows that Tiffany had, belonging to the town in his hands in liquors and cash, $234.97. The most in value of liquors on hand at any settlement is $150. That sum might be, and probably was, sufficient to furnish a proper supply of liquors, as such sales are usually for cash.   Hence, no inference that he purchased on the credit of the town is to be

48

drawn from the fact that his sales exceeded the value of the liquors furnished by the selectmen.    As the settlement of 1869 did not reveal the fact that the purchases had been made on the credit of the town, the town or selectmen had no occasion to revoke an agency which had never existed or been exercised to their knowledge.    Hence the purchase made after that settlement is equally unauthorized with the others.    The town did not receive the profits arising from these unauthorized purchases.    As soon as it was made aware that the purchases had been made on its credit, it surrendered the note of $400, which it had received of Tiffany on settlement, and relinquished not only the profits arising from the sales made that year, but the 234.97 in Tiffany's hands at the commencement of the year.    The plaintiffs have failed to show that Tiffany was authorized to make the purchases for the town, or that the town have ratified the purchases made by him without authority, and, therefore, fail to show a right to recover.

Judgment of the county court is affirmed.